# The Pennsylvania Railroad Company *versus* The City of Philadelphia.

*The constitutional amendment of* 1857 *discussed.—Power of municipal corporation to invest stock in other corporations.*

1. The city of Philadelphia has not the power to invest its stocks, money, or credit directly or indirectly in aid of a steamship line between that city and foreign ports, without the authority of a special Act of Assembly.

2. The passage of an ordinance authorizing the retention of a part of the dividends due to the city on stock of the Pennsylvania Railroad Company held by it, for the purpose of aiding in the establishment of an ocean steamship company, is in violation of the constitutional amendment of 1857, and void.

CERTIFIED from the Supreme Court at *Nisi Prius.*

This was an action of *assumpsit* by the city of Philadelphia against the Pennsylvania Railroad Company, to recover $94,500, dividends upon plaintiffs' stock in defendants' company, declared October 16th 1863, and payable November 15th 1863, but which was withheld by defendants.

Prior to consolidation the old city of Philadelphia became the owner of $4,000,000 of the capital stock of the Pennsylvania Railroad Company, and the districts of Spring Garden and Northern Liberties each of $500,000, making in all $5,000,000. The commissioners of the sinking fund have since disposed of $275,000 of the stock, and there is now belonging to the consolidated city $4,725,000 of stock, being 94,500 shares, at $50 per share.

The subscription by the two districts was in their coupon bonds, bearing semi-annual interest, and payable at defendants' office. The railroad company always deducted the interest on the

[Pennsylvania Railroad Co. *v.* City of Philadelphia.]

coupon bonds given by the districts for their subscriptions from the amount of the dividends declared on the stock held by the city, and paid the balance on demand. ·

On the 16th of October 1863, the company declared a semi-annual dividend of 5 per cent., payable on the 15th of November following, out of which they withheld $94,500. Demand for payment of this sum was made, and refused on the allegation that the defendants were entitled to hold it by virtue of an ordinance of councils relating to a projected line of steamships.

For several years past great exertions were made to establish an ocean steamship line between Philadelphia and foreign ports, an enterprise which, it was believed, would greatly augment the carrying trade of the Pennsylvania Railroad Company, and benefit the city. Efforts were therefore consequently made to induce the city to become a direct contributor to the enterprise.

In June 1863, the councils of Philadelphia adopted an ordinance, by which the railroad company were allowed to retain the excess above six per cent. of the dividends declared on the stock in the road held by the city, and also such dividends as should be paid on any stock of the railroad company as might be divided as a stock dividend, until the amount retained should reach $700,000. These moneys so retained, it was provided, should be invested by the company from time to time in city loans, the interest whereof was to be paid to the city.

This fund was ultimately to be applied by the company as an indemnity against any subscription which they might make to the steamship company, or against any loss which might result to the company by reason of their having given any guaranty in order to induce subscriptions to the steamship stock by other parties.

A contract embodying these provisions was therefore authorized to be made by the mayor with the defendants.

This ordinance did not receive the mayor's approval, but was allowed to become a law without his signature; he, however, notified councils that the contract required by the ordinance would not be executed by him, until a decision as to its legality was had. No contract was ever prepared or tendered to the mayor for execution, but the dividends were retained as above stated.

There was a verdict for the city for the amount claimed with interest, subject to the opinion of the court on the following reserved points, viz., Whether the plaintiffs under the law were entitled to recover either principal or interest; or both. January 23d 1864, the court entered judgment for plaintiff on both points.

The errors assigned were :—

1. That the court erred in entering judgment for the plaintiff on the points reserved;

2. In not entering judgment for defendant.

*Theodore Cuyler*, for plaintiffs in error.—The doubt which exists as to the constitutionality of this ordinance, arises under the third amendment of 1857 to the constitution of the state.

These words of the amendment are wholly *prospective.* They restrain *future* grants of power by the legislature within certain prohibited limits.

The ordinance rested upon no action of the legislature of date more recent than the constitutional provision.

The city acquired the stock by authority of an Act of the Legislature, approved March 27th 1848, and with it acquired all the rights and powers which are incident to an ownership.

The city possessed the same powers over this stock which private stockholders possessed, and might exercise over their own stock. It was not acquired by the city in the exercise of any municipal power, and its excess of dividends is not now disposed of through the exercise of any such power.

Whenever a municipal corporation engages in things not public in their nature, it acts as a private individual—no longer legislates, but contracts, and is as much bound by its engagements as is a private person. It is not in the power of the legislature to authorize the violation of such a contract: Western Saving Fund *v.* The City, 7 Casey 185; Ibid. 183; Bailey *v.* The Mayor, 3 Hill 513.

The ordinance of councils, the validity of which is drawn in question in this case, is not in conflict with the reason and spirit of the constitutional provision referred to. Its provisions are not productive of the mischief which was designed to be remedied and prevented by the establishment of these constitutional prohibitions.

*E. K. Nichols* and *F. Carroll Brewster*, for defendants in error.—The ordinance of July 14th 1863, is not of itself sufficient authority for the retention of the dividends, even had the contemplated contract been executed.

There should have been some enabling Act of Assembly. Without it no municipality could invest, or allow its revenues to be withheld, and invested by others in such an enterprise as a steamship line.

Such powers are not among the functions of government committed to towns or cities, nor will it avail to assert that the commercial prosperity of the city will be enhanced by the project.

Neither the Act of Consolidation nor any other statute gives to the city this authority.

The enterprise proposed to the City of Philadelphia, falls within that class, held *not* to be objects of municipal responsi-

bility : McDermond *v.* Kennedy, Brightly's Rep. 336 ; Sharpless *v.* The Mayor, 9 Harris 182.

An enabling statute would *not* avoid the difficulty.

The legal consequences of the ordinance relied on by the defendants, are to make the city of Philadelphia a stockholder in the projected steamship company.  A law expressly authorizing this, would be a palpable violation of the constitution of Pennsylvania.  " The legislature shall not authorize any county, city, borough, township, or incorporated district, by virtue of a vote of its citizens, *or otherwise,* to become a stockholder in any company, association, or corporation; or to obtain money for, or loan its credit to, any corporation, association, institution, or party:" Sec. VII., art. XI., Amend. to Constitution, Brightly's Purd. 24.

If, therefore, the legislature is incompetent to authorize or legalize this ordinance, how can it stand without the support of law ?

As the provisions of this ordinance are fastened on the stock held by the city, it would have a tendency to reduce it to a six per cent. paying stock, and thus reduce the capital or market value thereof when sold.  If this should be so, it would be an injury to the sinking fund to that extent.

Again, the ordinance contemplated the execution of a contract which has not been carried into effect.  Without it the provisions thereof are of no avail whatever.

The opinion of the court was delivered by

READ, J.—The Pennsylvania Railroad Company was incorporated under an Act of the 13th April 1846, and a subscription to its stock by the city of Philadelphia, in its then corporate name, became a subject of discussion in the councils of the corporation and amongst her citizens.  A committee of councils obtained the opinion of Messrs. Thomas I. Wharton and T. M. Pettit, concurred in by Mr. John Sergeant, in favour of the authority of the corporation to subscribe to the stock of the railroad company, based upon the general words of the preamble to the Act of 11th March 1789, incorporating the city, and of the power given by the 16th section to pass all such ordinances as "shall be necessary or convenient for the government and welfare of the said city."

A contrary opinion, denying the authority of the city under its charters to subscribe to a railroad company, was given by Mr. Binney, accompanied by a very learned and elaborate argument which Mr. Wharton undertook to answer : an opinion to the same effect was given by the writer of this, who contended, that the framers of the charters never intended to connect a railroad, a bank, a canal, or a turnpike with the corporation of the city.

[Pennsylvania Railroad Co. v. City of Philadelphia.]

The question formed a turning-point at the October election, and the decision being in favour of a subscription, the councils on the 12th November 1846 authorized a subscription to the stock of the company, which, with other ordinances subsequently passed, made the city a stockholder to the amount of eighty thousand shares, or four millions of dollars. The city was, however, not satisfied of its power under the charter to make the subscription, and an act was passed on 27th March 1848, validating it, and giving authority to the municipal corporations in the county of Philadelphia to subscribe for shares in the capital stock of the railroad company. This was the whole extent of the authority conferred upon the city by the legislature.

In 1853, the question of the constitutionality of similar Acts of Assembly, conferring similar authorities, was brought before this court and argued at great length by numerous counsel, and the result is to be found in Sharpless v. The Mayor, 9 Harris 147, and Moers v. City of Reading, Id. 188. In these cases my brother Strong and myself were concerned on the winning side. The decision in favour of the constitutionality of these acts was by a bare majority of the court, and left no doubt, that if the question had depended on the original charters of the cities of Philadelphia and Reading, unaided by special Acts of Assembly, the subscriptions to the stock of the respective railroad companies would have been declared to be entirely invalid. At the close of C. J. Black's opinion, as printed in the Legal Intelligencer, of the 9th September 1858, he uses this language: "Equally and even more impossible would be the attempt to show that the case in Brightly had anything to do with it. There was then no Act of Assembly permitting the subscription. No lawyer doubts that a borough can only subscribe to a railroad when expressly authorized by law to do so."

It was therefore settled that the original subscription of the city to the Pennsylvania Railroad Company was invalid, but that it was confirmed and validated by the Act of 1848. The evils of these subscriptions by counties and municipal corporations were so aggravated, that it became necessary to interfere and prevent by a constitutional prohibition all future pledges of municipal faith and property for such purposes under the sanction of the legislature, who only possessed the power to grant the proper authority. Under direct legislative sanction the city of Philadelphia had five millions of valuable stock, and five millions of utterly worthless stocks in various railroad companies, subscribed under a great outside pressure.

The constitution as amended provides that, "the legislature shall not authorize any county, city, borough, township, or incorporated district, by virtue of a vote of its citizens or otherwise, to become a stockholder in any company, association, or

11 Wr.—13

[Pennsylvania Railroad Co. *v.* City of Philadelphia.]

corporation; or to obtain money for, or loan its credit to any corporation, association, institution, or party."

The Act of 1848 only authorized the city to subscribe to the stock of the Pennsylvania Railroad Company and to become a stockholder; but the stock thus obtained became municipal property and applicable only to strictly municipal purposes. Here the authority ended, and as no other act was passed before the constitutional prohibition was made a part of the constitution, all power to aid by credit or money in any shape, any other corporation, was taken away from a city which required previous legislative sanction to do the act. The simple question then is, can the city of Philadelphia devote its stocks, its money, or its credit, to the aid of a steamship company, directly or indirectly, without the authority of a special Act of Assembly. The answer to it is perfectly plain that it cannot; and it is equally clear that the constitution expressly forbids the passage of any such act, and the consequence is that the ordinance relating to a projected line of steamships from the city of Philadelphia to foreign ports, is null and void and of no effect whatever.

The plaintiffs are therefore entitled to the fruits of their verdict for the principal sum of $94,500, deducting from the whole verdict of $95,492 the sum of $992 for interest; and thus modified,

·          The judgment is affirmed.